**UNITED STATES of America and Gwendolyn Scott, Revenue Officer of the Internal Revenue Service, Petitioners–Appellees,**

v.

**Charles L. SORRELLS, Respondent–Appellant.**

**No. 88–6152.**

United States Court of Appeals, Fifth Circuit.

July 5, 1989.

H. Victor Thomas, Robert S. Bennett, Houston, Tex., for respondent-appellant.

Thomas R. Lamons, William A. Whitledge, Gary Allen, Chief, Appellate Section, Tax Div., U.S. Dept. of Justice, Washington, D.C., Henry K. Oncken, U.S. Atty., Frank A. Conforti, Asst. U.S. Atty., Houston, Tex., for petitioner-appellees.

Before JOLLY, HIGGINBOTHAM, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Appellant Charles L. Sorrells appeals from an order of the district court holding him in contempt and ordering him incarcerated until he complies with a prior order enforcing a summons issued by the Internal Revenue Service (IRS). Because we agree with the district court that Sorrells has failed to prove that he is presently unable to comply with the enforcement order, we affirm.

## I.

During an investigation of Sorrells's income tax liabilities for the years 1981–1986 —years in which he failed to file returns— appellee Gwendolyn Scott, a revenue officer with the IRS, issued, on July 10, 1987, an administrative summons to Sorrells requiring him to produce documents, books, and records, and to give oral testimony, concerning his income tax liabilities for the years under investigation.[1] Sorrells failed to comply with the summons.

On January 22, 1988, the government commenced the instant civil action to obtain judicial enforcement of the summons. After the government began the action, Sorrells and a non-attorney to whom Sorrells referred as his "tax counsil [sic]" met with an assistant United States attorney, at which time Sorrells requested an extension of time to comply with the summons. The government attorney agreed to the extension on the condition that Sorrells sign an Agreed Order Compelling Production, which required him to appear and produce the records called for in the summons on May 2, 1988. On March 12, 1988, Sorrells executed the agreement without consulting

an attorney; the district court signed and entered the order on March 15, 1988.

When the appointed day for compliance with the summons arrived, Sorrells appeared with his "tax counsil," but failed to produce any documents. At that time, Sorrells denied that he had received any income during the years in question and that he was liable for any federal income tax.[2]

After Sorrells failed to comply with the summons, the government moved for, and received, a writ of bodily attachment for contempt on June 23, 1988. In attempting to serve process on Sorrells, the government discovered that he had moved out of his Houston, Texas, residence, and was unable to locate him for approximately five months, during which time Sorrells attempted to resolve the situation by writing several letters to both the government's counsel and the district court. According to Sorrells, he was busy traveling to and from Florida to take care of his sick mother; finally, he was arrested during one of these trips on November 8, 1988, near Gulfport, Mississippi.

At a November 22, 1988, show-cause hearing, Sorrells, who was now represented by an attorney, argued that the Agreed Order should not be enforced because he signed it without the advice of counsel and without knowledge of its legal consequences. Sorrells's attorney also requested that the hearing be continued to allow him an opportunity to meet with Sorrells to see which, if any, documents could be provided. The district court ordered that the hearing be continued for this purpose until December 5, 1988, during which time Sorrells would remain incarcerated.

---

1. The record indicates that the IRS had obtained evidence suggesting that Sorrells, in addition to other sources of income, had received in excess of $250,000 during the 1984–1986 tax years from Houston automobile dealerships, presumably for work performed tinting windows.

2. Sorrells contends that he signed the Agreed Order Compelling Production solely to obtain more time to investigate why the correspondence he received from the IRS contained a social security number other than his own. He again raised this argument at the May 2, 1988,

meeting, at which government counsel agreed to investigate the issue. By letter on May 23, 1988, government counsel informed Sorrells that he was assigned a temporary social security number at the beginning of the investigation when the IRS could not discover Sorrells's actual number. Notwithstanding that fact, government counsel informed Sorrells that he was obligated to comply with the summons, and that if he did not do so within five days, the government would file a motion to have Sorrells held in contempt of the Agreed order.

On December 5, 1988, Sorrells introduced his and his wife's testimony to the effect that he was unable to comply with the Agreed Order because he did not have possession or control of any documents of the type requested in the summons. Sorrells indicated that he would be willing to meet with counsel for the IRS and answer questions and review documents, subject to his right to claim his fifth amendment rights in response to any specific inquiries. Accordingly, the district court ordered that Sorrells, who remained incarcerated, meet with the IRS on or before December 8, 1988, to provide the testimony and documents sought by the summons.

On December 7, 1988, Sorrells and his attorney met with government counsel in an administrative hearing. Under oath, Sorrells again denied having possession or control of any "business records"; when asked what he meant by "business records," Sorrells indicated that he meant formal books or ledgers. When the government asked whether he had ever created any other records of business transactions, such as bills, statements, or receipts, Sorrells asserted his fifth amendment privilege against self-incrimination and refused to answer. Admitting that he had prepared business documents, such as statements reflecting auto-tinting work performed by him for car dealerships, Sorrells argued that such information could be used in a criminal prosecution to prove that he had received income during the years in question and that his failure to file returns was therefore wilfull. Sorrells also asserted his fifth amendment privilege in refusing to disclose whether he had any bank accounts during the relevant tax years.

At a hearing on December 8, 1988, after informing the district court of the outcome of the administrative hearing, the government argued that Sorrells had failed to meet his burden of proving that he was presently unable to comply with the enforcement order. The district court agreed, and held Sorrells in contempt, ordering that he remain incarcerated until he complied with the order enforcing the summons. After receiving a transcript of the December 7, 1988, administrative hearing, the court denied reconsideration of its contempt order. Sorrells appeals.

## II.

We review the district court's order holding Sorrells in contempt only for an abuse of discretion.[3] In this case, there is no question that Sorrells has failed to comply with the district court's order that he obey the summons. Sorrells contends, however, that the court erred in rejecting his defense that he was presently unable to comply with the order because he did not have possession or control of the requested documents.

## A.

Initially, Sorrells argues that he should not bear the burden of producing evidence in support of his defense of nonpossession. We do not agree.

■ Once a district court orders the enforcement of a summons requesting the production of documents, there arises a presumption that documents of the type described in the summons are in existence and in the continuing possession or control of the defendant. *See United States v. Rylander,* 460 U.S. 752, 760–61, 103 S.Ct. 1548, 1554–55, 75 L.Ed.2d 521 (1983) (stating that an enforcement order "necessarily contain[s] an implied finding that no defense of lack of possession or control had been raised and sustained" in the enforcement proceeding, thus giving rise to a "presumption of continuing possession arising from the enforcement order") (citing *Maggio v. Zeitz,* 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948)). Once an enforcement order is issued, a defendant cannot contend in a contempt proceeding that he lacked possession or control of the requested documents; he may only argue that he *pres-*

---

**3.** *See, e.g., Neely v. City of Grenada,* 799 F.2d 203, 207 (5th Cir.1986); *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.,* 793 F.2d 1529, 1534 (11th Cir.1986); *Ferrell v. Pierce,* 785 F.2d 1372, 1378 (7th Cir.1986); *Transgo, Inc. v. AJAC Transmission Parts Corp.,* 768 F.2d 1001, 1022 (9th Cir.1985), *cert. denied,* 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986).

*ently* is unable to comply with the order—in other words, that he now lacks possession or control of documents of the type requested in the summons. *See Rylander,* 460 U.S. at 757, 103 S.Ct. at 1552. In so doing, however, the defendant bears the burden of producing credible evidence establishing his present inability to comply with the court's order. *See id.*

■ In signing the Agreed Order Compelling Production, Sorrells did not even raise, much less prove, the defense that he lacked possession or control of the documents sought by the IRS. Sorrells nonetheless argues that the presumption of possession and control should not apply in this case because his acquiescence in the enforcement order was made without the benefit of legal advice and without knowledge of its legal consequences.

We find no merit in this argument. The record indicates that Sorrells and the person Sorrells held out as his counsel carefully reviewed the order before Sorrells signed it, and then only after the government's counsel explained the consequences of signing the order. The order implicitly acknowledges the existence of the documents and Sorrells's possession of them; if the documents did not exist or were not then in Sorrells's possession, we find it difficult to believe that Sorrells would have voluntarily signed an order that specifically stated that a writ of bodily attachment would be forthcoming if he failed to produce the documents.

In short, Sorrells, even without the benefit of legal counsel, was most certainly aware of the practical, if not the legal, meaning of the order he signed: He agreed to produce documents. Sorrells is therefore reduced to arguing that he "really didn't mean it" when he agreed to produce the documents. We will not allow Sorrells to play a game of legal " 'hare and hounds,' " *Rylander,* 460 U.S. at 762, 103 S.Ct. at 1555 (quoting *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 730,

94 L.Ed. 884 (1950)), with the government and the court by presenting serial defenses and taking inconsistent positions at the enforcement and contempt proceedings. If he was unable to comply with the summons because of a lack of possession, he was obligated so to inform the court at the enforcement stage of the proceedings. By not only failing to do so, but by affirmatively representing the contrary to the court, Sorrells has rightfully lost his ability to argue that the presumption of continuing possession is inapplicable in this case.

Our conclusion is bolstered by a comparison of the facts in this case with those in *Rylander,* in which the Court found the presumption wholly applicable. In *Rylander,* the defendant failed to appear at the enforcement proceedings; rather, he sent an unsworn letter to the court claiming that he was not associated with either of the two corporations about which the IRS sought documents from the defendant. Despite the fact that the defendant in *Rylander* arguably denied possession of the documents in question, the Court held that the presumption applied as a result of the issuance of the enforcement order.

In this case, Sorrells, far from maintaining that he did not possess the documents requested by the summons, actually agreed to produce them. If the presumption obtains with the mere issuance of an enforcement order on the basis of the "implied finding" that a defense of lack of possession has not been proven, it most certainly applies when the defendant voluntarily signs an order agreeing to produce the documents.

### B.

■ Once the government made out a prima facie case of contempt by showing that Sorrells had failed to comply with the court's order requiring him to produce documents responsive to the summons, Sorrells thus bore the burden of producing credible evidence[4] in support of his defense

---

**4.** Although *Rylander* does not speak in terms of "credible" evidence, the idea that a burden of production can be met only by the introduction of evidence that is credible seems beyond cavil.

The requirement is implicit in *Rylander* itself, where the Court held that a sworn denial of possession was insufficient to meet the defendant's burden of production unless the defen-

that, at the time of the contempt proceeding, he lacked possession or control of the documents. *See United States v. Rylander*, 460 U.S. at 757–61, 103 S.Ct. at 1552–55. The primary question in this case is whether Sorrells carried his burden of production.

Sorrells introduced evidence from two sources in support of his contention that he lacked possession or control of documents of the type described in the summons. The district court, in holding Sorrells in contempt, impliedly rejected this evidence as incredible or insufficient to demonstrate that Sorrells lacked possession of the requested documents. We agree.

The first evidence offered by Sorrells was the testimony and affidavit of his wife of fifteen years. In her affidavit, Mrs. Sorrells stated that her husband conducted all significant transactions in cash and did not have any "record books, documents, or receipts for income and/or bookkeeping records that I know about or the type of documents that I believe the I.R.S. is seeking." She also stated that her husband did not maintain any bank or checking accounts. At the December 5, 1988, hearing, she testified (1) that she was not aware of any checking accounts, bookkeeping, or other documents maintained by her husband, and (2) that she ran the household solely on cash received from her husband.

It is apparent from the qualifications in her testimony that it is of little value in ascertaining whether Sorrells has possession of the requested documents. That she is "unaware" of any documents created by her husband or in his possession does not establish anything except the state of her own knowledge. The limits of that knowledge—and therefore the inferences that can be drawn from it—are further established by her testimony that she has no knowledge of how her husband conducts his business. As for her testimony that household affairs were conducted in cash, it is similarly of no value in determining how Sorrells conducted his business operations, and whether he created or possesses any documents relating to it. In short, no conclusions can be drawn from Mrs. Sorrells's testimony or affidavit; accordingly, they do not assist Sorrells in meeting his burden of production.

The other evidence offered on Sorrells's behalf was his own affidavit and testimony. In his affidavit, Sorrells stated that he did not maintain a "checking account [or] . . . set of books or income records from 1981–1986" and that he did not have "the type of bookkeeping records that apparently the I.R.S. is seeking." In his testimony before government counsel on December 7, 1988, Sorrells denied having possession of any "business records" as he interpreted that phrase; when asked whether he had created any such documents—in particular, statements reflecting work done tinting automobile windows for Houston car dealerships—Sorrells invoked his fifth amendment right against self-incrimination and refused to answer on the ground that an admission that he had created such statements could be used in a criminal proceeding to prove that he had received income during the years in question and that his failure to file federal income tax returns was therefore wilful.[5]

Sorrells contends that his denial of possession, made under cross-examination, is sufficient to meet his burden of producing credible evidence that he presently lacks possession of documents of the type described in the summons. The government contends that Sorrells's testimony was evasive and, because of his repeated invo-

dant subjected himself to cross-examination on the subject. *See Rylander*, 460 U.S. at 758, 103 S.Ct. at 1553 ("This was a time for testimony, and Rylander's *ex parte* affidavit and uncross-examined testimony were properly disregarded by the District Court.") (citations omitted). In the closely analogous context of enforcement proceedings, we have stated that a defendant must prove a lack of possession by the introduction of "credible evidence." *See United States v. Huckaby*, 776 F.2d 564, 567 (5th Cir.1985), *cert.*

*denied*, 475 U.S. 1085, 106 S.Ct. 1468, 89 L.Ed.2d 724 (1986). We thus state explicitly what we find to have been implicit in *Rylander:* The defendant can meet his or her burden of production on this issue only by the introduction of credible evidence.

5. The relevant portions of Sorrell's testimony are reprinted in the appendix to this opinion.

cation of his fifth amendment privilege, effectively uncross-examined, therefore rendering it incredible. Like the district court, we agree with the government.

First, Sorrells's testimony regarding his current possession of documents responsive to the summons is evasive and contradictory. His testimony—littered with qualifications such as "I assume you're talking about accounting or bookkeeping, written things of that nature" and "he's testifying about ... bookkeeping, documents, accounting documents, book, that type of thing"—is not sufficient to indicate that he is unable to comply with the summons. The summons calls for the production of "[a]ll documents and records you possess or control that reflect income you received" during the tax years at issue; such documents would most certainly include, not just formal books or ledgers, but receipts, bills, statements, canceled checks, or any other papers—regardless of what title Sorrells gives them—that indicate that Sorrells received income. In sum, a denial of possession restricted to formal books and ledgers does not deny possession of all documents requested in the summons.

Second, even if Sorrells's denial of possession could be construed to encompass all of the types of documents covered by the summons, the district court was entitled to decline to credit the portion of his testimony as to which he declined to be cross-examined, i.e., testimony regarding the existence or possible location of the documents. As we have indicated, *supra*, the existence of the enforcement order, bolstered by Sorrells's acquiescence in it, means that Sorrells cannot now contend that, at the time of the order, he did not have possession or control of the documents requested by the summons; he can only contend, subject to the presumption that he continues to have possession, that he does not now have possession or control of the documents. In light of the factual and legal posture in which Sorrells finds himself, therefore, an uncross-examined denial of current possession is insufficient to meet his burden of production.

In simple terms, we presume that Sorrells has documents responsive to the summons; to make his denial of current possession credible, Sorrells must explain to the court why he does not now possess such documents. If he never had the documents —notwithstanding his representation to the court during the enforcement proceedings that he did have them—he must explain his misrepresentation to the court and convince it that he lacks the ability to comply. If he did possess the documents at the time of the enforcement order but now lacks the ability to produce them, he must likewise explain to the court how his current predicament came about. Sorrells, by invoking the fifth amendment and refusing to testify regarding the existence or disposition of undoubtedly relevant documents,[6] has done neither.

■ Finally, we reject Sorrells's argument that, because he must either comply with the summons or forego invocation of his fifth amendment privilege and offer incriminating testimony in order to purge himself of contempt, we should hold that he has met his burden of production.[7] This question was definitively resolved in *Rylander*, in which the Court held that a defendant's claim of fifth amendment privilege cannot be used to satisfy his burden of production:

> [W]hile the assertion of the Fifth Amendment privilege against compulsory self-incrimination may be a valid ground upon which a witness such as Rylander de-

---

**6.** In his brief, Sorrells suggests that any statements reflecting the performance of tinting work are not within the scope of the summons because a statement does not reflect the receipt of income, but rather is only "a description of services which have been provided." We will not dignify this argument with anything other than our conclusion that such statements, to the extent that they can be tied to other evidence indicating that Sorrells received payments from various automobile dealerships, are within the scope of the summons.

**7.** The government does not contest, on appeal, Sorrells's right to claim the fifth amendment privilege against self-incrimination. We thus assume, without deciding, that Sorrells's refusal to testify regarding the existence and location of documents requested in the summons is a proper invocation of the fifth amendment.

clines to answer questions, it has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production.... [To hold otherwise] would convert the privilege from the shield against compulsory self-incrimination which it was intended to be into a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his. None of our cases support this view.

.    .    .    .    .

The fact that [*Rylander's*] refusal to come forward with such evidence [showing a present inability to produce] was accompanied by a claim of fifth amendment privilege may be an adequate reason for the court's not compelling him to respond to cross-examination at the contempt hearing, but the claim of privilege is not a substitute for relevant evidence.

*Rylander*, 460 U.S. at 758–61, 103 S.Ct. at 1553–54. *See also Huckaby*, 776 F.2d at 568–70 (extending the reasoning of *Rylander* to a defendant's use of the fifth amendment privilege in proceedings to enforce an IRS summons); *cf. Tweeddale v. Commissioner*, 841 F.2d 643, 645 (5th Cir.1988) (taxpayer may not use fifth amendment privilege to meet his burden of proof in a deficiency proceeding); *Steinbrecher v. Commissioner*, 712 F.2d 195, 198 (5th Cir. 1983) (same).

**8.** *Cf. United States v. Rendahl*, 746 F.2d 553, 556 (9th Cir.1984) (defendant in a contempt proceeding may not be required to answer questions in violation of his fifth amendment right against self-incrimination); *United States v. Edgerton*, 734 F.2d 913, 918 (2d Cir.1984) (defendant could not be held in contempt specifically for refusing to answer court's questions regarding the existence and location of documents on the ground of fifth amendment privilege, but leaving open the question of whether he could be held in contempt for failing to comply with IRS summons and enforcement order). Our holding is thus not based upon the idea that, by failing to raise the defense of nonpossession at the enforcement stage of the proceedings, Sorrells "waived" the right to invoke his fifth amendment privilege regarding the documents.

In cases where such "waiver" has occurred, courts have held only that where the defendant, at the enforcement stage of the proceedings, fails to claim that the act of producing the documents would constitute a violation of his fifth amendment right, that defense cannot be raised for the first time at a contempt hearing. *See, e.g., United States v. Kirksey*, 631 F.Supp. 165, 169–70 (S.D.N.Y.1986); *United States v. Fein*, 85–1 U.S.T.C. 9185, 1985 WL 6227 (S.D.N.Y.1985). This is a simple application of the rule that defenses to production that are available at the time of the enforcement proceeding cannot be raised for the first time in a contempt proceeding. *See Rylander*, 460 U.S. at 756–57, 103 S.Ct. at 1551–52 ("'It would be a disservice to the law if we were to depart from the longstanding rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy. The procedure to enforce a court's order commanding or forbidding an act should not be so inconclusive as to foster experimentation with disobedience.'") (quoting *Maggio*, 333 U.S. at 69, 68 S.Ct. at 408).

As in *Rylander*, Sorrells is not being held in contempt for invoking the fifth amendment and refusing to answer questions put to him by the government; he is being held in contempt for failing to comply with the court's order to produce the documents requested in the summons.[8] Unless and until he complies with the enforcement order, or meets his burden of producing credible evidence showing that he is presently unable to comply, Sorrells remains in contempt of the court's order.

The order of the district court holding Sorrells in contempt of court and ordering him incarcerated until he purges himself of contempt is AFFIRMED.

### APPENDIX

Q. When you tinted automobile glass for one of these commercial enterprises, did you prepare any sort of statement?

MR. BENNETT [Sorrell's attorney]: Object to the question based on Fifth Amendment grounds.

Q. How did you record how many cars you were dealing—you were doing for a particular business?

MR. BENNETT: Based on the Fifth Amendment, we will—the question is incriminating, so we'll assert the—object to the question based on the Fifth Amendment.

.    .    .    .    .

Q. Mr. Sorrells, do you remember on December 5th, 1988 testifying before Judge Hittner I asked you whether you had any records, and your response was no? Is that still an accurate statement?

A. Excuse me. I assume you're talking about accounting or bookkeeping, written things of that nature?

Q. Any records of your business.

A. No, sir.

Q. I think you also stated that they were never there. Correct?

A. Correct. I told you, yeah, that's correct.

Q. And is that still your response? If I ask you whether you ever had any records concerning your automobile tinting business, you still say they were—there were never any records?

MR. BENNETT: Well, we'll object to the use of records as being undefined and imprecise and overly broad; but if the witness can answer the question, then I'll allow him to.

A. (Continuing) The interpretation, Manuel, that I had from you from the first time I met you, I told you this, that I did not have the records that you were asking for and it's still true. It was true then and it's still true.

Q. Were there any records at any point in time?

A. No.

. . . . .

Q. When you tinted automobile glass, did you create a document in the nature of a bill, a statement, a receipt evidencing the fact that you had tinted the glass?

MR. BENNETT: Just a minute. Let me talk to my client.

(Discussion off the record between the witness and Mr. Bennett.)

MR. BENNETT: Object on Fifth Amendment grounds.

Q. The fact is that you've testified that you never created any record or that there was not any record whatsoever of your business dealings. Right?

MR. BENNETT: Well, we're—Let me correct the record on that. The witness testified what he's testifying about was bookkeeping documents, accounting documents, book, that type of thing; and as to that part of the question, then that's true. As to anything else, he's asserting the Fifth Amendment.

Q. When you stated that you had no records of your business transactions, were you excluding any document in the nature of a bill, receipt, statement?

MR. BENNETT: Object on Fifth Amendment grounds.

. . . . .

Q. Let me ask, Mr. Sorrells, when you tinted automobile glass for a commercial business, did you create a document in the nature of a bill, receipt, statement evidencing the fact that you had tinted the automobile?

MR. BENNETT: We'll object to that based on Fifth Amendment grounds that if he did create some kind of bill or statement and if that was presented to some business, then—and if that business possibly paid the bill, then that would or possibly could be a source of income to Mr. Sorrells; and if he testified about that, that would be an incriminating statement. So based on the form of the question, we're raising the Fifth Amendment objection to it.

. . . . .

Q. During the years at issue—I'm referring to the years '81 through '86—did you have any bank accounts at any bank or financial institution?

MR. BENNETT: Object on Fifth Amendment grounds.

Q. Do you have bank accounts or accounts with any other financial institution in Florida?

MR. BENNETT: Object on Fifth Amendment grounds.

. . . . .

Q. Do you have any business records or not?

MR. BENNETT: With him here today, no, he doesn't.

MR. PORRO–VIZCARRA: I didn't add that, Counsel.

**354**

MR. BENNETT: We'll object to the form of the question as being imprecise and incomprehensible, do you have any records.

Q. Do you have any business records for the years under examination, concerning your dealings, your business transactions?

MR. BENNETT: Okay. We'll object to the question as being imprecise and incomprehensible. And I don't think the witness understands the terminology used. But, again, with that objection if you're asking him whether he has any records, any business records—

A. (Continuing) I do not have. As I understand what you're asking me, you know, the term that you're using, no, I do not have.

Q. What do you understand by the term business records?

A. Ledgers, however you would call your bookkeeping, you know. I don't—I don't have those.

Q. And would a statement evidencing the tinting of automobile glass, would that be a record under your definition?

A. Yes, it would be. But, you know, I don't have any of those.

Q. Did you ever have them?

MR. BENNETT: We'll object on Fifth Amendment grounds.