

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-2-2006

# In Re: Grand Jury

Precedential or Non-Precedential: Precedential

Docket No. 06-2819

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"In Re: Grand Jury " (2006). *2006 Decisions.* Paper 265.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/265

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-2819
No. 06-2820
_____

IN RE GRAND JURY

and

IN THE MATTER OF THE SEARCH OF
JELANIE SOLOMON,

Appellant.
_____

On Appeal from the United States District Court
For the Western District of Pennsylvania
(Misc. No. 06-15 and Mag. No. 06-122M)
District Judge: Honorable Terrence F. McVerry
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 15, 2006
_____

Before: SLOVITER, WEIS, and GARTH, Circuit Judges

(Opinion Filed: October 2, 2006)
_____

OPINION OF THE COURT
_____

MARTIN A. DIETZ, ESQ.
Grant Building, 36th Floor
Pittsburgh, PA 15219

ROBERT E. STEWART ESQ.
1710 Lawyers Building
Pittsburgh, PA 15219

*Attorneys for Appellant*
*Jelanie Solomon*

Mary Beth Buchanan
Tina O. Miller
Office of United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA 15219

*Attorneys for Appellee*
*United States of America*

Garth, <u>Circuit</u> <u>Judge</u>:

I.

In the present consolidated appeals, Appellant Jelanie Solomon seeks review of the district court's orders: (1) finding Solomon guilty of criminal contempt for failing to comply with a grand jury subpoena and a subsequent court order, and imposing a five-month prison sentence therefor (order of March 28, 2006); and (2) denying Solomon's motion to quash a post-indictment search warrant to obtain samples of his blood and saliva (order of May 1, 2006).

With respect to the criminal contempt conviction, we hold that the district court properly found Solomon guilty of criminal contempt. We also hold that the five-month sentence imposed is excluded from guidelines coverage and, pursuant to that holding, was not an abuse of discretion. We will therefore affirm.

As to the district court's order denying Solomon's motion to quash the search warrant issued for samples of his blood and saliva, we are without jurisdiction to consider Solomon's appeal because it is interlocutory, and does not fall within any of the limited exceptions to the general rule that our jurisdiction is limited to final orders or decisions.

## II.

In January 2004, Solomon was convicted in Pennsylvania state court of various narcotics violations. Solomon subsequently became the subject of a federal grand jury investigation concerning his alleged narcotic trafficking activities, as well as his involvement in the murder of the father of a confidential informant who had assisted in the state's investigation of Solomon's narcotics activities. It is alleged that while in state prison, Solomon corresponded with associates concerning uncollected drug debts.

On March 1, 2006, Solomon was served with a federal grand jury subpoena for handwriting exemplars. Solomon did not object, move to quash, or otherwise challenge the validity of the subpoena. Counsel arranged for Solomon to provide the exemplars to United States Postal Inspector Joseph Bellisimo on March 9, 2006 at the Washington County Jail, where Solomon was then incarcerated. Bellisimo met with Solomon and his attorney at the appointed time and place, and presented them with a typewritten version of an allegedly incriminating letter Solomon had written to an associate concerning the collection of drug debts. Solomon began providing the exemplars but, after nearly completing one of the handwriting forms, indicated that he would not provide the exemplars and tore the form he had completed into shreds.

-4-

The government filed a motion to compel Solomon to provide the exemplars. Solomon did not respond to this motion and, on March 16, 2006, the district court entered an order compelling Solomon to provide handwriting exemplars. On March 22, 2006 Bellisimo again appeared at the Washington County Jail to take Solomon's handwriting exemplars. Again, Solomon refused. The government then filed a motion for rule to show cause why Solomon should not be held in contempt for failing to comply with the court's March 16, 2006 order.

A contempt hearing was held on March 24, 2006. At the hearing, Solomon's attorney conceded that Solomon had refused to comply with the court's March 16, 2006 order. Though requested by the court, Solomon also refused to provide any reason for not complying. Solomon's attorney advised the court that, just prior to the hearing, the government had provided him with a handwritten copy of the allegedly incriminating letter it sought to compare to exemplars of Solomon's handwriting. At no time did Solomon object to the relevance of the letter or handwriting exemplars to the grand jury investigation. After colloquy with the government's attorney, the court advised Solomon of the potential penalties he faced for his continued refusal to comply with the court's order. The court then asked Solomon if he wished to "change his mind." Solomon responded that he did not, and that he would not comply with the subpoena or the March 16, 2006 order. The court then stated the following:

Therefore, the court makes a finding on the record that Mr. Jelanie Solomon has, in open court, through his attorney, refused to comply with the subpoena and provide handwriting exemplars as he has been ordered by the order of this court on March 16, 2006. His failure to comply with that order results in a finding of criminal contempt for his disobedience or resistance to a lawful writ, process, order, rule, decree or command. For that criminal contempt, he is sentenced to five months incarceration and will be remanded to the Bureau of Prisons for that period of time.

III.

A nine-count indictment was subsequently returned against Solomon, charging him and two other defendants with conducting a drug trafficking conspiracy, and various firearms and narcotics violations, including a charge of murder during and in relation to a drug trafficking crime. After his indictment, on April 4, 2006, the government obtained a search warrant for Solomon's blood and saliva. In support of its application for the search warrant, the government submitted an affidavit by a member of the Pennsylvania State Police, which stated that the government had probable cause to believe that Solomon was involved in the murder of Frank Halisek.

In short, the affidavit asserted that Frank Halisek's son Shawn was an informant for the Pennsylvania State Attorney General's Office, and that Shawn Halisek was instrumental in the investigation leading to the successful state prosecution of Solomon. On January 19, 2004, the night before Solomon's state court trial, an individual named Claron Hanner shot and killed Frank Halisek at his home. According to the affidavit, a confidential informant who had at one point owned the gun used in the murder, stated that he had later sold the gun to Solomon for drugs. Laboratory tests performed on the gun indicated the presence of two unidentified DNA profiles in addition to Hanner's. The affidavit concluded by stating that samples of Solomon's blood and saliva were needed to determine whether Solomon's DNA matched one of the unidentified DNA profiles found on the gun.

Before the warrant was executed, Solomon filed a motion to quash. The motion asserted that there was not sufficient probable cause for the issuance of the search warrant and that its execution would violate his Fourth Amendment right against unreasonable searches and seizures. On April 14, 2006, a magistrate judge denied the motion. Solomon appealed to the district court and, on May 1, 2006, the district court affirmed.[1]

_____

[1] Although the search warrant had expired on April 14, 2006, the district court properly found that the motion to quash was not moot because the Government stated that it intended to re-issue the search warrant. See Cal. Coastal Com v. Granite Rock Co., 480 U.S. 572, 578 (1987) (case not mooted where the controversy is one

-7-

These appeals followed.

IV.

We review the district court's order holding Solomon in contempt for an abuse of discretion. <u>Harris v. City of Philadelphia</u>, 47 F.3d 1311, 1321 (3d Cir. 1995). Under this standard, factual findings will be upheld in the absence of clear error, but legal questions must be reviewed de novo. <u>Id.</u>; <u>Wright v. Nichols</u>, 80 F.3d 1248, 1250 (8th Cir. 1996).

Solomon challenges his criminal contempt conviction on the solitary ground that the government failed to provide him with a Schofield affidavit. As Solomon correctly states, this court has held that, when a subpoena for purposes of a grand jury proceeding is challenged, the government is required to make some preliminary showing by affidavit that each item is at least relevant to an investigation being conducted by the grand jury and properly within its jurisdiction, and is not sought primarily for another purpose. <u>In re Grand Jury Proceedings</u>, 486 F.2d 85, 93 (3d Cir. 1973) (<u>Schofield I</u>); <u>see</u> <u>also</u> <u>In re Grand Jury Proceedings</u>, 507 F.2d 963, 966 (3d Cir.) (<u>Schofield II</u>) (identifying this burden of proof as a "three-pronged showing requirement"), <u>cert.</u> <u>denied</u> <u>sub</u> <u>nom.</u> Schofield v. United States, 421 U.S. 1015 (1975)("What <u>Schofield I</u> did require, however, was a minimum showing by affidavit *in every case*. . .")(emphasis added).

capable of repetition yet evading review).

-8-

Unlike the present case which involves a conviction for *criminal* contempt, the Schofield cases involved the imposition of sanctions for *civil* contempt pursuant to 28 U.S.C. § 1826. We have previously suggested that the Schofield requirements may not apply to criminal contempt proceedings because, unlike the imposition of civil contempt sanctions, which may be summarily imposed, a criminal contempt defendant is afforded the full panoply of due process protections.  See In re Grand Jury Proceedings Harrisburg Grand Jury 79-1, 658 F.2d 211, 217 (3d Cir. 1981)(hereinafter "Harrisburg Grand Jury 79-1").

In Harrisburg Grand Jury 79-1, the defendant had been convicted for criminal contempt after he evaded a bench warrant issued for his failure to comply with a grand jury subpoena.  On appeal, the defendant challenged his criminal contempt conviction on the grounds that he was never provided a Schofield affidavit.  We rejected this argument, distinguishing criminal contempt from the civil context at issue in Schofield:

> It should be stressed that in this context the procedural safeguards embodied in the Schofield rule are unnecessary, and any possible defect in the bench warrant here is rendered harmless precisely because a defendant in criminal contempt proceedings has the full panoply of safeguards accorded a criminal defendant. While Fed. R. Crim. P. 42, governing criminal contempt, authorizes summary punishment for contumacious

acts committed in the presence of the court, <u>see</u> subsection (a), it otherwise requires notice and a full hearing. Rule 42(b). In addition to the guarantee set forth in Rule 42(b) of "a reasonable time for the preparation of the defense," a criminal contempt defendant has the right to counsel and the right to refuse to testify. He is favored with a presumption of innocence, and must be found guilty beyond a reasonable doubt. Indeed, the very absence of constitutional and Fed. R. Crim. P. 42(b) safeguards for civil contemnors, and the uncertainty over the procedural rights required in section 1826 proceedings -- the type of proceeding involved in <u>Schofield</u> -- assists in explaining the judicially devised <u>Schofield</u> protection for witnesses charged with contempt pursuant to section 1826.

<u>Harrisburg Grand Jury 79-1</u>, 658 F.2d at 216-217.

It is not necessary to decide at this time, however, whether failure to comply with <u>Schofield</u> requires the reversal of a conviction for criminal contempt, because we find that, in the present case, the government's actions satisfied all <u>Schofield</u> objectives. <u>Schofield</u> requires a showing by the government that the items sought by a grand jury subpoena are (1) relevant to an investigation being conducted by the grand jury; (2) properly within its jurisdiction; and (3) is not sought primarily for another

purpose. Schofield I; 486 F.2d at 93.  The government made the necessary showing under Schofield when Postal Inspector Bellisimo first met with Solomon and his attorney on March 9, 2003, and showed them a typewritten version of a letter, allegedly written by Solomon, concerning the collection of outstanding drug debts.  At no time did Solomon object to the relevance of the handwriting exemplars to the grand jury proceedings or otherwise suggest that they were being sought primarily for another purpose.

Prior to the contempt hearing, the government again produced the letter, this time a photocopy of the handwritten original, to Solomon's attorney.  Again, the letter showed the relevance of Solomon's handwriting exemplars to the grand jury investigation into Solomon's drug trafficking activities.  At the hearing, Solomon objected, *not to the relevance of the letter*, but to how it was obtained.  Under these circumstances, we find that the government fully satisfied its requirements under Schofield.

V.

The parties disagree on the standard of review to be applied with respect to Solomon's sentence.  The government contends that we are to review Solomon's sentence for criminal contempt for abuse of discretion.  Green v. United States, 356 U.S. 165, 187 (1958); United States v. Ray, 683 F.2d 1116, 1122 (3d Cir. 1982) (criminal contempt sentence "is within the discretion of the judge and is reviewable only for an abuse of that discretion"); United States v. Patrick, 542 F.2d 381, 392-93

-11-

(7th Cir. 1976), <u>cert.</u> <u>denied</u>, 430 U.S. 931 (1977).

Solomon, on the other hand, argues that we must review his sentence for "reasonableness," the standard set forth by the Supreme Court in <u>United States v. Booker</u>, 543 U.S. 220 (2005), after the Court held that mandatory application of the Federal Sentencing Guidelines was unconstitutional. <u>Id.</u> at 261-262. In addition to eliminating those portions of the Sentencing Reform Act of 1984 (the "Act") that made the Guidelines mandatory, <u>Booker</u> also excised, "because of its critical cross-references" to the Guidelines, 18 U.S.C. § 3742(e), the statutory provision of the Act governing the standard for reviewing sentences on appeal. <u>Id.</u> In its place, the Court mandated review of sentences under a standard of "reasonableness." <u>See</u> <u>United States v. Cooper</u>, No. 05-1447, 2006 U.S. App. LEXIS 8075 (3d Cir. April 4, 2006) (setting forth a framework for conducting reasonableness analysis).

1.

Most federal crimes are classified by felony or misdemeanor letter grades on the basis of the maximum sentence that can be imposed. <u>See</u> 18 U.S.C. §§ 19, 3559(a). Contempt, however, cannot be classified in this manner because there is no maximum sentence imposed by statute. Instead, to classify Solomon's criminal contempt we look to the actual sentence imposed. <u>See</u> <u>Frank v. United States</u>, 395 U.S. 147, 166 (1969)("[I]n prosecutions for criminal contempt where no maximum penalty is authorized, the severity of the penalty

-12-

actually imposed is the best indication of the seriousness of the particular offense"); Cheff v. Schnackenberg, 384 U.S. 373, 380 (1966)("Since Cheff received a sentence of six months' imprisonment [for criminal contempt] . . .Cheff's offense can be treated only as 'petty' in the eyes of the statute and our prior decisions."); United States v. Gedraitis, 690 F.2d 351, 354 (3d Cir. 1982) (contempt deemed a misdemeanor within magistrate's jurisdiction because the penalty *actually imposed* would not exceed six months' imprisonment).

Here, the sentence actually imposed by the district court was five months' imprisonment. It should therefore be classified a Class B misdemeanor. See 18 U.S.C. § 3559(a)(7) (offenses for which the maximum term of imprisonment authorized is six months or less but more than thirty days are classified as Class B misdemeanors). Such offenses are specifically exempted from coverage under the Guidelines:

> The sentencing guidelines do not apply to any count of conviction that is a Class B or C misdemeanor or an infraction.

U.S.S.G. § 1B1.9.

The commentary states that these offenses are excepted from the Guidelines for reasons of judicial economy, and that, "[n]otwithstanding any other provision of the guidelines, the court may impose any sentence authorized by statute for each count that is a Class B or C misdemeanor or an infraction."

U.S.S.G. § 1B1.9 cmt. n.1, background.

2.

While the Guidelines were in place, courts divided on the standard of appellate review of sentences imposed for Class B and C misdemeanors. Some courts held that, despite the inapplicability of the Guidelines to such offenses, the standard of review to be applied was nevertheless the one stated in 18 U.S.C. § 3742(e) for review of sentences imposed pursuant to the Guidelines. These courts reviewed Class B and C misdemeanor sentences under § 3742(e)(4)'s "plainly unreasonable" standard, which applies to offenses "for which there is no applicable sentencing guideline." See United States v. De Jesus, 277 F.3d 609, 612 (1st Cir. 2002); United States v. Sharpton, 252 F.3d 536, 540 (1st Cir. 2001); United States v. Bichsel, 156 F.3d 1148, 1151 (11th Cir. 1998).

Others held that the "plainly unreasonable" standard of review set forth in 18 U.S.C. § 3742(e)(4) does not apply to Class B and C misdemeanor offenses, which are entirely excluded from guidelines coverage. See United States v. Gibson, 896 F.2d 206, 210 (6th Cir. 1990); United States v. Snow, No. 98-5439, 1999 U.S. App. LEXIS 8349 (6th Cir. April 27, 1999); United States v. Clements, No. 91-5813, 1992 U.S. App. LEXIS 7348 (4th Cir. April 16, 1992). These courts continued to review sentences imposed for Class B and C misdemeanors under the highly deferential pre-Guidelines standard.

-14-

We did not have the opportunity to consider the standard of review for sentences for Class B and C misdemeanors while the mandatory guidelines regime was in place. Upon present consideration, we find that the exclusion of Class B and C misdemeanors from the Guidelines provisions was intended to place those offenses entirely outside the statutory scheme, including the review provisions contained in § 3742(e). Accordingly, we hold that our review of sentences imposed for Class B and C misdemeanors must be conducted under the pre-Guidelines standard applicable to those offenses, rather than the reasonableness test set forth in Booker.[2]

## VI.

The court's power to impose penalties for criminal

---

[2] We therefore need not confront the question of the continued viability of the "plainly reasonable" standard of review after Booker. Compare United States v. Johnson, 403 F.3d 813, 816-17 (6th Cir. 2005); United States v. Soto, No. 05-2190, 2006 U.S. App. LEXIS 18552 at *4 n.2 (6th Cir. July 20, 2006) (finding the "plainly unreasonable" standard still viable after Booker for sentences with no applicable sentencing guideline) with United States v. Tedford, 405 F.3d 1159, 1161 (10th Cir. 2005); United States v. Cotton, 399 F.3d 913, 916 (8th Cir. 2005); United States v. Fleming, 397 F.3d 95, 99 (2d Cir. 2005) (holding that Booker's excision of § 3742(e), and its establishment of a reasonableness standard of review, rendered the "plainly unreasonable" standard of § 3742(e) obsolete).

contempt derives from 18 U.S.C. § 401, which provides, in relevant part:

> A court of the United States shall have power to punish by fine or imprisonment, or both, *at its discretion*, such contempt of its authority . . . as--
>
> . . . .
>
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command (emphasis added).

Consistent with the statutory language, courts have been afforded broad discretion in imposing an appropriate sentence, whether fine or imprisonment, for disobedience of its orders resulting in criminal contempt. United States v. United Mine Workers, 330 U.S. 258, 303 (1947); Green v. United States, 356 U.S. 165, 188 (1958); Frank v. United States, 395 U.S. 147, 149 (1969)("Congress, perhaps in recognition of the scope of criminal contempt, has authorized courts to impose penalties but has not placed any specific limits on their discretion."); Ray, 683 F.2d at 1122; Patrick, 542 F.2d at 392-93. Indeed, there are no statutory limits on the court's discretion to impose penalties for criminal contempt.[3] The proper standard by which the court is to determine the nature and extent of criminal contempt

---

[3] Rule 42(a)(3) of the Federal Rules of Criminal Procedure, which deals with criminal contempt, provides only that "upon a finding or verdict of guilty [of criminal contempt] the court must impose the punishment."

sanctions has long ago been stated by the Supreme Court:

> Sentences for criminal contempt are punitive in their nature and are imposed for the purpose of vindicating the authority of the court. . . .The interests of orderly government  demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter.   One who defies the public authority and willfully refuses his obedience, does so at his peril.  In imposing a fine for criminal contempt, the trial judge may properly take into consideration the extent of the willful and deliberate defiance of the court's order, the seriousness of the consequences of the contumacious behavior, the necessity of effectively terminating the defendant's defiance as required by the public interest, and the importance of deterring such acts in the future. Because of the nature of these standards, great reliance must be placed upon the discretion of the trial judge.

United Mine Workers, 330 U.S. at 303.

The sentence, left to the broad discretion of the trial judge, is therefore reviewable only for an abuse of that discretion.  Green, 356 U.S. at 188; Patrick, 542 F.2d at 392-93; Ray, 683 F.2d at 1122-1123; United States v. Sorrells, 877 F.2d 346, 348 (5th Cir.1989); United States v. Kimble, 305 F.3d 480,

-17-

485 (6th Cir. 2002).

In the present case, we have no difficulty concluding that the district court did not abuse its discretion by imposing a five-month sentence upon Solomon for his refusal to provide handwriting exemplars pursuant to subpoena and court order. Solomon had been given numerous opportunities to provide the samples, including the two occasions he was visited by Postal Inspector Bellisimo at the Washington County Jail as well as in open court at the contempt hearing. Solomon repeatedly refused to comply. Moreover, the handwriting samples sought by the subpoena were and are necessary for the investigation of the crime of capital murder – certainly a matter of great public interest. Accordingly, we hold that the five-month sentence imposed was not an abuse of discretion.

## VII.

Solomon also seeks this court's review of the district court's order denying his motion to quash the April 4, 2006 search warrant seeking samples of his blood and saliva. However, Solomon cites no jurisdictional basis for this interlocutory appeal. The order denying Solomon's motion to quash the search warrant is not a "final decision" under 28 U.S.C. § 1291. Midland Asphalt Corp. v. United States, 489 U.S. 794, 798 (1989) ("In criminal cases, [28 U.S.C. § 1291] prohibits appellate review until after conviction and imposition of sentence."); Flanagan v. United States, 465 U.S. 259, 263 (1984); Berman v. United States, 302 U.S. 211, 212

(1937)("Final judgment in a criminal case means sentence. The sentence is the judgment."); <u>Catlin v. United States</u>, 324 U.S. 229, 233 (1945) ("A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."); <u>see</u> <u>also</u> <u>United States v. Peachtree Nat'l Distributors</u>, 456 F.2d 442, 444 (5th Cir. 1972) (holding that an order authorizing the issuance of a search warrant was not a final order under 28 U.S.C. § 1291 and hence not appealable).

Nor does the order denying Solomon's motion to quash qualify for interlocutory review pursuant to the collateral order doctrine set out in <u>Cohen v. Beneficial Indus. Loan Corp.</u>, 337 U.S. 541 (1949). The collateral order doctrine permits appellate review of interlocutory orders that (1) conclusively determine the disputed question, (2) resolve an issue completely separate from and collateral to the merits of the litigation, and (3) involve an important right that will be effectively unreviewable if intermediate review is not granted. <u>United States v. Levine</u>, 658 F.2d 113, 117 (3d Cir. 1981) (<u>citing</u> <u>Coopers & Lybrand v. Livesay</u>, 437 U.S. 463, 468 (1978)).

The denial of Solomon's motion to quash the search warrant does not satisfy the collateral order doctrine because it does not satisfy the third requirement-i.e., it will not be "effectively unreviewable" in the absence of interlocutory consideration. If Solomon's DNA matches, or does not match, the DNA found on the gun, he may move to suppress the evidence if there is a valid legal theory for doing so. If that motion is denied, and if Solomon is convicted, the denial of the

-19-

motion to suppress may then be asserted as a ground for appeal from the final judgment.

"Adherence to [the] rule of finality has been particularly stringent in criminal prosecutions because the delays and disruptions attendant upon intermediate appeal, which the rule is designed to avoid, are especially inimical to the effective and fair administration of the criminal law." Abney v. United States, 431 U.S. 651, 658 (1977).  As we have previously stated:

> When the right to be tried in a particular manner is not vindicated prior to trial, the defendant can still avail himself of post-conviction remedies after the fact.  This is true even if the defendant has already endured a trial that he should not have endured, and even if the proper remedy for the constitutional or statutory violation is dismissal of the charges or reversal of the conviction.

United States v. Liotard, 817 F.2d 1074, 1080 (3d Cir. 1987).

As there is no authority providing us with jurisdiction to review this interlocutory order, we cannot consider it.

## VIII.

For these reasons, we will affirm the Solomon's five-month sentence for contempt.  We dismiss Solomon's appeal from the denial of his motion to quash the search warrant for

lack of jurisdiction.