Chittenden, J.
This is an action in equity to have declared null and void a marriage contract between the plaintiff, Lila Marie Moser, and the defendant, Ananias Long. The evidence shows *11 that the plaintiff at the time of the solemnizing of the marriage was of the age of seventeen years. She resided with her parents on a farm near the village of Perrysburg. In February, 1915, the defendant, a young man about twenty-one years of age, came to the home of the plaintiff, seeking employment as a farm hand. He was a stranger in the vicinity, and stated that he had come from Virginia where his home was. He entered into the employment of the plaintiff’s father, John Moser, and continued in such employment until the following May, when he left the home of Moser and took employment with some neighbor. During all the time he lived with John Moser, and afterward, no evidence of any intimacy or unusual friendship or attachment between the plaintiff and the defendant was observed by either the father or the mother, or anyone else, so far as the testimony discloses. The evidence of the plaintiff does not disclose anything other than a relation of friendship existing between the plaintiff and the defendant.
On the 8th day of June, 1915, the plaintiff desired to go to the city of Toledo to do some shopping, and in pursuance of a conversation between the plaintiff and the defendant over the telephone, and at his suggestion, they met on that date at the interurban station in Toledo. The plaintiff’s purpose in meeting him at that place was to accompany him to a moving-picture show in Toledo. They did go to a show, and while together he began begging her to go with him to Monroe, Michigan, and be married. In this connection it is proper to state that the evidence shows that the plaintiff is a slight, *12 delicate girl, and that the defendant is a large, vigorous man. As a result of his persistent urging the plaintiff did at last consent, and directly thereafter did go to Monroe with the defendant on an electric interurban car. The city of Monroe is about an hour’s ride by trolley car from Toledo. At Monroe, the defendant procured from the clerk of the court a marriage license. In order to obtain the license the defendant made affidavit that the plaintiff was eighteen years of age. They at once proceeded to a parsonage and were married by a minister of the gospel. Immediately after the marriage they boarded a trolley car and returned to the city of Toledo, and upon arriving in the city they at once separated, the plaintiff taking a Bowling Green car to her home and the defendant taking a Perrysburg belt car to the village of Perrysburg. The fact of the solemnizing of this marriage having been published in the newspapers, the parents of the plaintiff obtained knowledge of the marriage for the first time on the following day.
The evidence shows that the plaintiff, immediately after the marriage ceremony, repented her folly, and upon the fact of the marriage being made known to her parents expressed to them her regret and her desire and intention to repudiate the same. In explanation of her act she says that “He kept teasing me and pressing me and I simply lost my head, and as soon as I began to think it over I repented what I had done.”
Shortly thereafter she wrote a note to the defendant advising him that she did not want anything more to do with him, and she has at all times since declined to have anything to do with the de *13 fendant or to recognize him in any way as her husband. The evidence clearly discloses that the plaintiff and the defendant have never cohabited, or in any way sustained towards each other the relation of husband and wife.
From what has been said it will of course appear that the parents of the plaintiff at no time gave their consent to this marriage. Shortly after the marriage the defendant returned to Virginia, and has remained there ever since. He has entered his appearance in the case, but interposes no defense to this action.
The statute of Ohio, Section 11181, General Code, which differs in no essential respect from the statute of Michigan upon the subject of marriage, provides:
“Male persons of the age of eighteen years, and female persons of the age of sixteen years, * * * may be joined in marriage. Male persons under the age of twenty-one years, and female persons under the age of eighteen years must first obtain the consent of - their fathers, respectively, or in case .of the death or incapacity of their fathers, then of their mothers or guardians.”
It will thus be seen that the legislature of the state of Ohio has to a very great extent modified the common-law rules upon this subject. The steady trend of legislation has been to prevent the marriage of young and immature persons. The age at which marriage may take place has been raised from the common-law rule of twelve years for a female and fourteen for a male. But a further protection has been afforded them by requiring that if marriage be desired under the age *14 of majority, eighteen years for the female, and twenty-one for the male, the consent of the father or other proper guardian shall first be obtained.
We are not called upon in this case to determine the exact limitations that are placed upon the entering into a marriage contract by the requiring of this consent between the ages named. In the case under consideration we have these essential and material facts — a young girl of the age of seventeen years, without the knowledge or consent of her parents or either of them, having her mental poise disturbed and her will overcome by the persistent solicitation and urging of a vigorous young man with whom she had previously had only ordinary friendly relations, consenting to a marriage authorized by a license obtained by the defendant upon perjured evidence given by him; no cohabitation, following the marriage, or 'any other act that would operate as a recognition of the marriage relation; a prompt repudiation of the marriage by the plaintiff as soon as she was away from the domination and control of the defendant; and a continued separation of the plaintiff and the defendant ever since, followed by an application to the court to have the contract annulled.
There have been various adjudications in which courts have held, under the facts disclosed in the cases under consideration, that marriage between parties under the age of consent were valid; but only one case that has been called to our attention presents facts essentially like those found in the case at bar. That is a case decided by the supreme court of Nevada, Fitzpatrick v. Fitzpatrick, 6 Nev., 63. The supreme court of Nevada in that case held that *15 the marriage was binding, and refused to grant a decree annulling the same. We think it unnecessary to undertake a review.of other cases upon this subject, but content ourselves with a statement that the facts in those cases were so different from the facts in the case at bar that we do not consider them as controlling authority in this case.
A majority of the court are of the opinion that a decree should be entered in this case annulling the marriage contract. We are unable to find any grounds of public policy or public morals which require any different decree. The plaintiff would have the undoubted right to repudiate, upon the ground of her minority, any other contract that she might have undertaken to enter into, except for necessaries, and we see no reason why she should be precluded, under the facts shown in this record, from repudiating the most important contract that she could possibly have undertaken 'to enter into. To permit a young and inexperienced girl to be permanently bound by a contract entered into in a moment of weakness and folly, under the circumstances attending this case, it seems to us, would be to deprive her of thát parental protection that was intended to be vouchsafed her by the statute, and which she has, and should have, by every natural law. We think that to insist upon her being bound by this contract would not be to promote public morals, but, on the contrary, it would be a most potent influence in the opposite direction. In reaching this conclusion we are in no way indicating what our decision might be under a different state of facts.
*16 A decree may be drawn declaring the marriage to be null and void.

Judgment for plaintiff.

Kinkade, J., concurs.